DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

NOAH STERN (CABN 297476)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7320
    FAX: (415) 436-7234
    Noah.Stern@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 19-00331 WHO |
| Plaintiff, | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| v. | Sentencing Date: February 6, 2020 |
| TERRANCE ROSE, | Time: 1:30 p.m. |
| Defendant. | Judge: Hon. William H. Orrick |

## I. INTRODUCTION

On May 24, 2019, San Francisco Police Department ("SFPD") officers executed a search warrant on Terrance Rose outside his residence and found a loaded firearm, ammunition, and a large quantity of drugs, including Fentanyl, in his backpack. For the reasons set forth below, the government requests that the Court adopt the parties agreement and sentence Mr. Rose to 48 months in prison, a three-year term of supervised release (with the conditions recommended by the Probation Office and agreed in the Plea Agreement), a $200 special assessment, and order forfeiture of the firearm and ammunition seized. Mr. Rose's carrying of a loaded firearm while engaging in drug trafficking activity created a dangerous situation and demonstrated disregard for the rule of law in spite of numerous prior

criminal justice sentences. A 48-month sentence is below the applicable guidelines range of 57 to 71 months and is a just punishment, will provide adequate specific and general deterrence, and will avoid unwarranted sentencing disparities.

## II.     BACKGROUND

### A.     Mr. Rose's Conduct in May 2019

On May 14, 2019, SFPD officers observed Mr. Rose engaging in drug trafficking activity in the Tenderloin neighborhood of San Francisco, California. PSR ¶¶ 8-9. SFPD officers obtained a search warrant for Mr. Rose and his residence and vehicles. *Id.* ¶ 11. Officers executed the warrant on the morning of May 24, 2019. *Id.* ¶ 12. Officers apprehended Mr. Rose as he was leaving his residence. *Id.* They searched a backpack he was wearing and found a loaded Glock-style handgun, 15 rounds of .40 caliber ammunition, fentanyl, marijuana, and various assorted pills containing a mixture or substance containing morphine, diazepam, hydromorphone, and methamphetamine. *Id.* The net weight of the fentanyl was 25.56 grams. *Id.* ¶ 16. Officers searched Mr. Rose's residence and found over 150 rounds of ammunition of various calibers. *Id.* ¶ 19.

### B.     Mr. Rose's Criminal History

Mr. Rose has sustained six criminal convictions over the past ten years. *Id.* ¶¶ 36-42. In May 2010, Mr. Rose was sentenced on a conviction for Second Degree Burglary (Cal. PC § 459), receiving three days jail and three years probation. *Id.* ¶ 36. In February 2011, Mr. Rose was sentenced on a conviction for Grand Theft from a Person (Cal. PC § 487(c)) for an incident in which he stole a phone from a woman near the Balboa BART station. *Id.* ¶ 37. Mr. Rose was sentenced to six months jail and three years probation. *Id.* After initially being charged with a hit and run in January 2012, Mr. Rose pleaded guilty to driving without a license (Cal. VC § 12500(a)) and was sentenced to twenty days jail and three years probation. *Id.* ¶ 38. In February 2013, Mr. Rose was sentenced on a conviction for Selling or Offering for Sale Morphine (Cal. H&S § 11352(a)). *Id.* ¶ 39. He received 1 year jail, three years probation, and a 3 year suspended prison sentence. *Id.* In June 2014, his probation term was reinstated and he was ordered to serve 143 days jail. *Id.* In July 2013, Mr. Rose received twelve days jail and two years probation after being convicted of providing a false identification to specific peace officers (Cal. PC § 148.9(a)). *Id.* ¶ 40. In November 2014, Mr. Rose received twenty-four days jail and

1  three years probation for obstructing a public officer (Cal. PC § 148(a)(1)).  *Id.* ¶ 41.  The Presentence
2  Report notes that Mr. Rose was arrested on 20 other occasions.  *Id.* ¶¶ 43-63.

3      **C.**    **The Indictment and Guilty Plea**

4      A federal grand jury indicted Mr. Rose on July 23, 2019, charging him with one count of Felon
5  in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g), and one count of
6  Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  *See*
7  Dkt. No. 1.  Mr. Rose pleaded guilty to both counts in the indictment with a plea agreement pursuant to
8  Rule 11(c)(1)(C) on October 31, 2019.  *See* Dkt. No. 26.  In the plea agreement, the parties agreed that a
9  reasonable and appropriate disposition of the case is a prison sentence of 48 months, followed by three
10 years of supervised release, forfeiture of all firearms and ammunition seized, and a mandatory $200
11 special assessment.

12 **III.**    **SENTENCING GUIDELINES CALCULATIONS**

13     As set forth in the written plea agreement and the PSR, the Sentencing Guidelines calculations
14 for Mr. Rose's offense level is as follows:

15     a.    Base Offense Level, U.S.S.G. §2K2.1(a)(4):    20
16     b.    Specific offense characteristics under U.S.S.G. Ch. 2    + 4
17         (2K2.1(b)(6)(B) – Possession in connection with another felony offense)
18     c.    Acceptance of Responsibility, U.S.S.G. §3E1.1:    - 3
19     d.    Adjusted Offense Level:    21

20 *See* Dkt. No. 26 ¶ 7; PSR ¶¶ 23-33.

21     The parties reached no agreement regarding Mr. Rose's criminal history as part of the plea
22 agreement.  *See* Dkt. No. 26 ¶ 7.  The Probation Officer concluded that Mr. Rose's criminal history
23 score is 8, and he therefore falls into Criminal History Category IV.  PSR ¶ 42.  The government agrees
24 with the Probation Officer's criminal history calculation.  As reflected in the PSR, the Guidelines range
25 for imprisonment associated with adjusted offense level 21 and Criminal History Category IV is 57 to 71
26 months prison.  *Id.* ¶ 87.

27
28

## IV. SENTENCING RECOMMENDATION

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. The Jointly Recommended Sentence is Sufficient But Not Greater Than Necessary In Light of the Section 3553(a) Factors

The 48-month sentence agreed to by the parties is sufficient to account for the dangerousness of Mr. Rose's offense and his significant criminal history without being greater than necessary.

Mr. Rose's carrying of a loaded firearm next to a large quantity of drugs that he intended to distribute posed a significant danger to the community. The handgun Mr. Rose carried was designed to harm or kill other humans, whether in self-defense or in aggression. Mr. Rose's drug trafficking activity increased the danger posed by the firearm because of the likelihood of conflict with rival drug dealers, law enforcement, or customers. Mr. Rose introduced a significant danger to anybody who was near him by walking out of his front door with a loaded firearm. Mr. Rose's possession of over 26 grams of Fentanyl also posed a substantial danger to the community. Fentanyl sold on the streets is deadly, and San Francisco is facing an increasing number of deaths from Fentanyl overdoses. *See* Evan Sernoffsky

and John King, *Fentanyl, heroin overdoses in San Francisco more than doubled in 2019*, S.F. Chron., Jan. 21, 2020, *available at* https://www.sfchronicle.com/bayarea/article/Fentanyl-heroin-overdoses-in-San-Francisco-more-14993628.php ("There were 234 deaths that are estimated to have involved fentanyl [in 2019], compared with 90 in 2018."). A 48-month prison sentence reflects the seriousness of Mr. Rose's conduct and provides just punishment for the danger that his conduct posed to others.

A 48-month sentence also provides much needed specific deterrence. Prior to this offense, Mr. Rose had been convicted of six criminal offenses in the past 10 years. He also has a significant arrest record. The PSR notes 20 additional arrests. Despite these arrests and convictions Mr. Rose has apparently made no effort to conform his conduct to the law and a significant custodial sentence is necessary to deter Mr. Rose from continuing to break the law and put society at risk.

Mr. Rose's difficult upbringing is a mitigating circumstance that supports a below guidelines sentence. Mr. Rose grew up without a father and was taken out of his mother's care when he was two years old because she was addicted to drugs. PSR ¶ 65. Although unverified, Mr. Rose reported living in approximately 27 different foster home settings and approximately four group homes. *Id.* ¶ 66. He then became homeless. *Id.* ¶ 68. Mr. Rose appears to have also struggled with addiction. *Id.* ¶¶ 70, 77-80.

Finally, for the same reasons described above, a three-year term of supervised release following a custodial sentence is appropriate in this case. The parties agreed on an expanded search condition that should apply to Mr. Rose during any term of supervised release and a Tenderloin stay-away order. *See* Dkt. No. 26 ¶ 9. The Probation Officer recommends those conditions be adopted. PSR Sentencing Recommendation. Mr. Rose's history proves that he poses a high risk of reoffending, and this warrantless search condition is "necessary to mitigate that risk." *See United States v. Cervantes*, 859 F.3d 1175, 1184 (9th Cir. 2017). Requiring Mr. Rose to stay away from the Tenderloin is also necessary to mitigate the risk of his reoffending.

## V.   CONCLUSION

For the foregoing reasons, the government recommends that the Court adopt the parties agreement and sentence Mr. Rose to 48 months in prison, a three-year term of supervised release, and a $200 special assessment. The Court should also order Mr. Rose to forfeit his interest in the firearm and

1 ammunition seized from him and his residence.

2

3   DATED: January 30, 2020                    Respectfully submitted,

4                                              DAVID L. ANDERSON
                                               United States Attorney
5

6
                                                _/s/ Noah Stern_
7                                              NOAH STERN
                                               Assistant United States Attorney
8

GOV'T SENTENCING MEM.                    6
CR 19-00331 WHO